UNITED STATES, Appellee,

v.

Private E1 Jason L. STAPP, United States Army, Appellant.

ARMY 20010433.

U.S. Army Court of Criminal Appeals.

22 Dec. 2004.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Captain Eilin J. Chiang, JA (on original and specified-issue brief); Captain Kathy Martin, JA.

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Captain Mark A. Visger, JA (on brief); Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Theresa A. Gallagher, JA; Captain Mark A. Visger, JA (on specified-issue brief).

Before HARVEY, Senior Judge, BARTO, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

BARTO, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of attempted distribution of a controlled substance, absence without leave, violation of a lawful general order, wrongful use (two specifications) and distribution (four specifications) of controlled substances, and breaking restriction in violation of Articles 80, 86, 92, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 886, 892, 912a, and 934, respectively [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for eight years, and forfeiture of all pay and allowances. A pretrial agreement limited the confinement that the convening authority could approve to four years, but to moot any claim of prejudice flowing from untimely post-trial processing, the convening authority approved only so much of the sentence as provides for a dishonorable discharge, confinement for forty-five months, and forfeiture of all pay and allowances. Appellant was further credited with fifty-nine days of pretrial-confinement credit.

This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. Two issues merit discussion and relief. First, appellant's guilty plea to violating a lawful general regulation was partially improvident. Second, we agree with appellant that the military judge erroneously considered inadmissible pre-sentencing evidence and improperly limited cross-examination of a government pre-sentencing witness. We will reassess the sentence in our decretal paragraph.

## BACKGROUND

On 23 February 2001, JC and KW ran away from their respective homes in Everson, Washington; JC was fifteen years old at the time, while KW was sixteen. The two girls eventually made their way to Fort Lewis, Washington, arriving on or about 27 February 2001, in the company of several soldiers from appellant's unit. The soldiers gave the girls alcohol and they became so intoxicated that they could not leave the barracks until early on the morning of 28 February 2001. It was when the girls returned to Fort Lewis later on that day that they first met appellant. He purchased alcohol, including a bottle of vodka, and allowed KW and various underage soldiers to consume it. Both girls passed out after consuming large quantities of alcohol, and JC awoke to find herself naked and being sexually violated by a soldier from appellant's unit. The girls eventually left Fort Lewis on Friday, 2 March 2001.

The two girls returned to the barracks on Sunday, 4 March 2001, and went to appellant's room looking for a soldier who was apparently out of town. Appellant invited the girls to smoke marijuana with him and a friend, and they did so. Later in the evening, the girls accepted appellant's invitation to spend the night in his barracks room. JC agreed to sleep with appellant in his bed, but recalled telling appellant "that she did not want anything to happen sexually." JC was feeling the effects of the marijuana she used earlier, and, as the parties later stipulated, appellant "coaxed JC into having sex." JC did not manifest a lack of consent. Appellant did not know that JC was fifteen years old, and did not use any force greater than that incident to the intercourse. KW and appellant's friend were also in the room at this time and could hear the sexual activity between appellant and JC. Appellant, JC, and KW parted company the next morning, and the girls spent the evening with other soldiers in appellant's unit.

Appellant next encountered JC and KW on 6 March 2001, when he once again shared marijuana with JC in his barracks room. It was at this time that JC told appellant and another soldier that she was seventeen years old. The two girls then left appellant's room, but stayed in the barracks with other soldiers from appellant's unit until 8 March 2001, when a soldier notified the chain of command that the girls were staying in the barracks. The girls were then taken into custody and turned over to their parents.

## PROVIDENCE OF GUILTY PLEA

### Additional Facts

Appellant pleaded guilty to distributing some amount of marijuana to JC while she spent the night with him in his room. Appellant pleaded not guilty to committing carnal knowledge with JC, and the military judge dismissed that charge upon government motion pursuant to the pretrial agreement between appellant and the convening authority. Appellant also pleaded guilty to Additional Charge III and its Specification, which alleged the following:

In that Private Jason L. Stapp, U.S. Army, did, at or near Fort Lewis, WA, between on or about 4 March 2001 and on or about 5 March 2001, violate a lawful general order, to wit: paragraph 6(d)(1)(a), paragraph 6(d)(1)(b), and paragraph 6(d)(1)(c), Fort Lewis Policy Statement # 10, dated 16 November 2000, by wrongfully having Miss [JC], a person under the age of 18, in his barracks room overnight, between 2300 hours, 4 March 2001 and 0800 hours, 5 March 2001, and by failing to sign in the said Miss [JC] with the unit CQ/SDNCO.

The military judge explained the offense in the following fashion:

The elements of that offense, which is called violating a lawful general order or regulation, are:

One, that there was in existence a certain lawful general order in the following terms: Paragraph 6(d)(1)(a) of Fort Lewis Policy Statement Number 10, dated 16 November 2000, which states[,] "Visits may be made from 0800 to 2300, Sunday through Thursday, from 0800 to 0200, Friday and Saturday, and from 0800 to 0200 on a day preceding a recognized official or unit training holiday. Visitation during any other time period in not permitted. No overnight visitors are permitted in the barracks";

Paragraph 6(d)(1)(b) of Fort Lewis Policy Statement Number 10, dated 16 November 2000[,] which states[,] "Any nonmilitary visitor below the age of eighteen, who is not a member of the soldier's immediate family—for example, brother or sister—must be accompanied by a legal parent or guardian at all times";

And paragraph 6(d)(1)(c) of Fort Lewis Policy Statement Number 10, dated 16 November 2000, which states[,] "Visitors must be sponsored and escorted at all times. The sponsor is responsible for the visitor. Visitors will be signed in and out through the unit CQ [or] SDNCO";

Two, that you had a duty to obey that order; and,

Three, that, at or near Fort Lewis, Washington, between on or about 4 March 2001 and on or about 5 March 2001, you violated this lawful general order by

wrongfully having Miss [JC], a person under the age of eighteen, in your barracks room overnight between 2300 hours, 4 March 2001, and 0800 hours, 5 March 2001, and by failing to sign in Miss [JC] with the unit CQ [or] SDNCO.

Appellant acknowledged that he understood the elements and definitions read by the military judge and disclaimed any questions concerning them. Appellant also affirmed that he understood, believed, and admitted by his plea of guilty that those elements correctly described what he did. During the subsequent colloquy with appellant, the military judge stated, "now these two females were not eighteen, right?" Appellant responded that he did not find out that JC and KW were not eighteen until after they stayed in his room.

A stipulation of fact supports appellant's assertion to the military judge and provides, in relevant part, the following:

On Tuesday, 6 March 2001, JC went to the barracks room of the accused looking for PVT Stead. The accused answered the door and PVT Michelle Ruiz, 63d Ordnance Company, was also present. PVT Ruiz and the accused were smoking [m]arijuana from a pipe. The accused invited JC to come in the room. Since PVT Ruiz, another female, was present, JC agreed. The accused again gave JC [m]arijuana. While JC, the accused and PVT Ruiz were in the room, PVT Ruiz asked JC how old she was. JC told PVT Ruiz that she was 17. After JC left, PVT Ruiz asked the accused who she was and what he knew about her as she did not believe that JC was 17. The accused said that he met her and another female a few nights earlier and that the girls originally said that they were 18, but later, he became suspicious that they were not. PVT Ruiz asked the accused if he knew how old they really were and the accused said that he did not know.

The trial counsel noted the difficulty raised by appellant's response and asked the military judge, "is there no specific intent requirement with respect [to] violation of that provision? If he doesn't think that he violated it, then I'm concerned about whether or not it's violated." The military judge resumed his questioning of appellant on that point:

MJ: And, it was my understanding, Private Stapp, what you told me is, although when they spent the night, you may have thought they were eighteen, but the next day, you learned they were not. Yet, they were still in the barracks, right?

ACC: That's correct, sir.

MJ: And, later on—a couple of days later, JC came to your room, right? When you distributed marijuana to her?

ACC: Yes, sir.

MJ: And at that point, she wasn't accompanied by a legal parent or guardian, right?

ACC: That's correct, sir.

MJ: And you knew she was under eighteen, right?

ACC: Yes, sir.

MJ: So, at the very least we have a violation on that day of that provision, as well.

TC: Okay, sir. I just wanted to clarify that point.

MJ: No, thank you.

### Law

We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle,* 44 M.J. 374, 375 (C.A.A.F.1996). We will not disturb a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the plea. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). A providence inquiry into a guilty plea must establish that the accused believes and admits that he is guilty of the offense, and that the factual circumstances admitted by the accused must objectively support the guilty plea. *United States v. Garcia,* 44 M.J. 496, 497–98 (C.A.A.F.1996) (citing *United States v. Higgins,* 40 M.J. 67, 68 (C.M.A.1994); *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A. 1980)); *see* UCMJ art. 45(a), 10 U.S.C. § 845(a).

*Discussion*

██ We are limited in our ability to analyze the providence of appellant's plea of guilty to violating a Fort Lewis "policy statement" when the military judge fails to admit the policy itself into evidence as a prosecution exhibit or attach the document to the record of trial as an appellate exhibit. In the absence of the complete "statement," and given that "offenses that require no *mens rea* generally are disfavored," *Staples v. United States,* 511 U.S. 600, 606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), we will therefore assume without deciding that the "statement" prohibits only its knowing violation.[1]

The trial counsel apparently assumed likewise before he queried the military judge as to the requisite *mens rea* for culpable violation of the order in question. The military judge tacitly acknowledged that appellant had to know that he was entertaining visitors under eighteen years of age to violate the "statement," and set out to establish such knowledge by questioning appellant. However, appellant's responses established only that he learned the girls were under eighteen almost two days after they stayed the night in his room.

Mere suspicion that JC was under eighteen is insufficient to establish criminal liability under these facts, and the military judge abused his discretion when he concluded that such a mental state, articulated for the first time after the offense in question, was sufficient to violate the "statement."[2] These ambiguities broached during the plea inquiry raise a substantial question in law and fact as to the providence of appellant's plea of guilty to violating Fort Lewis Policy Statement # 10 by "wrongfully having Miss [JC], a person under the age of 18, in his barracks room overnight, between 2300 hours, 4 March 2001 and 0800 hours, 5 March 2001." We will modify the findings in our decretal paragraph.

## PRESENTENCING EVIDENCE

### Additional Facts

During the pre-sentencing portion of appellant's trial, the government called First Sergeant (1SG) David Null to testify. Trial defense counsel objected to 1SG Null's testimony concerning the effect of "the court process" upon appellant's unit. Trial counsel responded that "if he hadn't committed the crime ... we wouldn't do the court-martial," and the military judge overruled the objection. First Sergeant Null was then allowed to testify that the company was unable to properly recover from a recent field exercise because of the court-martial itself. First Sergeant Null also testified that the company supply sergeant, armorer, and two other noncommissioned officers were "involved in the court-martial, due to their interaction with the accused." Trial counsel went on to elicit the comment from the witness that "other members of the command, of course, have had to leave their duties to be here." First Sergeant Null also remarked that his presence at the court-martial had an adverse impact on the morale of the unit because a subordinate noncommissioned officer had to stand in for him at a training meeting while the witness testified at appellant's trial.

JC's mother (CC) also testified on behalf of the government during the pre-sentencing portion of appellant's trial. Her testimony takes up a remarkable forty-nine pages in

---

1. Our assumption is bolstered by the presence of "wrongfully" in the specification, which means without justification or excuse. Ignorance or mistake of fact as to the age of an individual is normally an excuse to otherwise criminal misconduct. Rule for Courts–Martial [hereinafter R.C.M.] 916(j)(1).

2. Failure to report known criminal behavior "will not, standing alone, subject an individual to criminal prosecution in the absence of a special duty." *United States v. Heyward,* 22 M.J. 35, 36 (C.M.A.1986) (footnote omitted). The policy itself is unclear as to the nature of any "special duty" on the part of a soldier who encounters an underage or unsolicited visitor in a barracks setting. A better crafted order would expressly state, in active voice and with positive, defined terms, that anyone subject to the order who encounters an underage, uninvited, unescorted, or otherwise unauthorized visitor in the barracks shall report such fact to the charge of quarters or military police as soon as practicable. No such pronouncement is found in the "policy statement," and when confronted with regulatory ambiguity of this sort, we are unwilling to imply a generalized duty to report that is applicable to appellant.

the record of trial, and was the object of frequent objection by trial defense counsel. Over defense objection, the military judge allowed the witness to describe the difficulty she had in recovering JC's possessions from the barracks. She described her reception by unit personnel as a "joke" and "a long cat-and-mouse game." CC frequently testified in narrative fashion, making preemptive objection by defense counsel difficult; in the middle of one extended monologue, JC's mother remarked, "The CID officer actually had to sit there and argue with this guy, who I remember my brother commented, 'What are we, in the "hood?" ' " While CC described at length the difficulty she had in retrieving some of JC's possessions from a particular soldier's truck, defense counsel renewed her objection to testimony "regarding something that another private did. My client wasn't even involved in this." The military judge summarily overruled the objection and invited the witness to continue.

Defense counsel also objected to CC's testimony concerning JC's emotional state and need for professional counseling since her time at Fort Lewis, asserting "there apparently were many men involved here and many incidents over many days." As the defense counsel attempted to explain that the effect of appellant's conduct upon JC was impossible to distinguish from the effects caused by others, the military judge cut her off in mid-sentence and told her "to explore that on cross-examination, if you so choose."

CC also repeatedly described the changes that had taken place in JC since her experience at Fort Lewis and expressed her outrage at the Army for having allowed such activity to take place. On cross-examination, defense counsel sought to test the credibility and basis for CC's opinions by asking her if she was aware that her daughter "was actually hiding in the barracks so that she wouldn't get thrown out," but was prevented from doing so by the military judge.

Trial defense counsel also objected to testimony by JC's uncle about JC's mental state

after she left Fort Lewis "because it does not directly relate to the offense for which Private Stapp is pleading guilty" and the testimony would be unduly prejudicial. The military judge disagreed and allowed the uncle to testify that JC was more "removed" and "remote" after her time at Fort Lewis.

### Law

"The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4). Such evidence may include,

> but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person ... who was a victim of an offense committed by the accused and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense.

*Id.*

■ In sum, evidence of the natural and probable consequences of the offenses of which an accused has been found guilty is ordinarily admissible at trial. *See United States v. Rust,* 41 M.J. 472, 478 (C.A.A.F. 1995). However, not *every* circumstance or consequence of misconduct may be admitted into evidence during the pre-sentencing portion of court-martial.[3] An accused is not "responsible for a never-ending chain of causes and effects." *United States v. Witt,* 21 M.J. 637, 640 n. 3 (A.C.M.R.1985). "The standard for admission of evidence under this rule is not the mere relevance of the purported aggravating circumstance to the offense." *United States v. Gordon,* 31 M.J. 30, 36 (C.M.A.1990). "A higher standard is required." *Id.* The evidence sought to be admitted must establish that the offense of which appellant has been found guilty "contributed to those effects which the government is trying to introduce in evidence." *Witt,* 21 M.J. at 641. Moreover, appellant's offense must play a material role in bringing

---

**3.** *See* R.C.M. 1001; *cf.* Ruggero J. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking* 193–200 (1989) (observing that a material fallacy of false cause occurs "whenever we argue that because a certain event was preceded by another event, the preceding event was the cause of the latter").

about the effect at issue; the military judge should not admit evidence of an alleged consequence if an independent, intervening event played the only important part in bringing about the effect. *See Rust,* 41 M.J. at 478; *cf.* Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook, para. 5–19 (1 April 2001) (describing legal significance of intervening cause).[4] Finally, the military judge may exclude otherwise relevant evidence in aggravation "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Military Rule of Evidence [hereinafter Mil. R. Evid.] 403; *see United States v. Hursey,* 55 M.J. 34, 36 (C.A.A.F.2001) (applying Rule 403 to sentencing proceedings). "The defense may [also] present matters in rebuttal of any material presented by the prosecution and may present matters in extenuation and mitigation." R.C.M. 1001(c).

■ We may overturn an evidentiary ruling by a military judge to which counsel objected at trial if the ruling is an abuse of discretion and it causes material prejudice to the substantial rights of an appellant. Mil. R. Evid. 103(a); *see* UCMJ art. 59(a), 10 U.S.C. § 859(a). Erroneous admission or exclusion of evidence during the sentencing portion of a court-martial causes material prejudice to an appellant's substantial rights only if the admission or exclusion of the evidence substantially influenced the adjudged sentence. *See United States v. Boyd,* 55 M.J. 217, 221 (C.A.A.F.2001) (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). We evaluate the influence of an erroneous ruling admitting or excluding evidence "by weighing (1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr,* 51 M.J. 401, 405 (citing *United States v. Weeks,* 20 M.J. 22, 25 (C.M.A.1985)); *see United States v. Henson,* 58 M.J. 529, 532 (Army Ct.Crim.App.2003).

*Discussion*

■ The military judge erred when he allowed 1SG Null to testify concerning the effect of the court-martial itself upon the readiness of his company. The discretion to allow or direct a soldier to attend a court-martial, whether as a witness or a spectator, ordinarily belongs to the unit commander. *See* R.C.M. 703(e)(1). The discretion to order the production of a military witness during pre-sentencing proceedings belongs to the military judge and is subject to significant regulatory constraints. R.C.M. 1001(e)(1). The exercise of such independent discretion is not properly attributable to appellant as aggravation evidence. *See Rust,* 41 M.J. at 478. Accordingly, evidence of the administrative burden of the court-martial process is ordinarily not "evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense." R.C.M. 1001(b)(4). *But cf. United States v. Key,* 55 M.J. 537, 539 (A.F.Ct.Crim. App.2001) (holding removal of appellant and accomplices from duty positions after misuse of authority was admissible as direct result of misconduct). If we were to conclude otherwise, trial counsel would be able to argue to the sentencing authority at trial that an accused may be punished more harshly for the inconvenience of the trial. This would be akin to allowing comment upon the right to plead not guilty or remain silent, and we cannot countenance such an unjust outcome.[5]

4. We are aware that this court has previously disclaimed the applicability of "tort concepts" like proximate cause and foreseeability to the issue at hand. *Witt,* 21 M.J. at 640–41 & 642 n. 8. In the intervening years since that decision, military law has become more open to legal concepts borrowed from civil practice; *see, e.g., United States v. Acevedo,* 50 M.J. 169, 172 (C.A.A.F.1999) (interpreting pretrial agreements with reference to civil contract law principles); *United States v. Taylor,* 44 M.J. 254 (C.A.A.F. 1996) (applying concepts of intervening cause and medical malpractice to involuntary manslaughter case). As such, we do not share the reluctance of our predecessors to apply the language of causation to our interpretation of R.C.M. 1001, and we decline to follow *Witt* to the extent that it rejects the use of such principles.

5. Our holding does not affect the ability of trial counsel to introduce service data relating to the accused taken from the charge sheet, *see* R.C.M.

■ The military judge also abused his discretion when he allowed CC to describe over defense objection the difficulty that she had in recovering her daughter's belongings from the barracks. CC was outraged that the soldiers with whom she was dealing were treating her quest like a "joke" and were playing "cat and mouse" with the CID agent who was assisting her. CC testified that her brother, who had accompanied her to the barracks, wondered whether they were "in the 'hood.'" However, there was no evidence that appellant had anything to do with the actions of those largely unidentified soldiers who were obstructing CC's effort. Moreover, it is uncontroverted that JC was a fifteen-year-old runaway who voluntarily came and went from the barracks over an extended period of time and socialized with a number of soldiers in different rooms during her stay. Under these circumstances, we are unwilling to impute to appellant any difficulty in recovering JC's belongings or the obstructive behavior of apparently independent actors. *See Rust,* 41 M.J. at 478.

■ The military judge also erred by restricting trial defense counsel's cross-examination of CC. On direct examination by trial counsel, CC testified that she was very close to JC, had a healthy family life with JC, and she characterized JC as naïve and studious. During cross-examination, trial defense counsel elicited from CC that JC was having behavioral and adjustment difficulties prior to running away from home, had left a note stating that she was running away to avoid CC's interference in her life, that JC had a boyfriend, and that she had previously used drugs. However, the military judge did not allow trial defense counsel to question CC concerning her awareness that JC stayed at Fort Lewis willingly and attempted to avoid detection.

Evidence that CC was aware that JC stayed at Fort Lewis willingly and attempted to avoid detection during her stay was relevant to the defense impeachment effort. Such an awareness may have indicated a motive for CC to fabricate or exaggerate certain aspects of her testimony to paint JC in a more favorable light. If CC did not know of these facts, her ignorance could undercut the weight given to her testimony concerning the psychological and physical effects of the events at Fort Lewis upon JC. Under either scenario, the evidence that defense counsel sought to elicit from CC was logically and legally relevant to the determination of a fair and appropriate sentence for appellant. Its exclusion by the military judge was, under the circumstances,[6] an abuse of discretion.

We hold that this case falls under the doctrine of cumulative error, in which "a number of errors, no one perhaps sufficient to merit reversal," in combination necessitate remedial action. *United States v. Walters,* 4 U.S.C.M.A. 617, 635, 16 C.M.R. 191, 209, 1954 WL 2442 (1954) (citing *United States v. Yerger,* 1 U.S.C.M.A. 288, 3 C.M.R. 22, 1952 WL 1822 (1952)); *United States v. Childress,* 33 M.J. 602, 607 (A.C.M.R.1991). *See also United States v. Hobbs,* 42 C.M.R. 870, 1970 WL 7253 (A.C.M.R.1970) (setting aside sentence for cumulative error). We will therefore reassess the sentence.

At the time of trial, appellant was a twenty-three-year-old signal support systems specialist with no dependents and no previous criminal convictions. The military judge found appellant guilty of committing four distributions of various controlled substances (4–methylenedioxy amphetamine, methamphetamine, cocaine, and marijuana), attempt-

1001(a)(1)(A)(i), including "the duration and nature of any pretrial restraint." R.C.M. 1001(b)(1). The court-martial may also consider "[t]hat a plea of guilty is a mitigating factor." R.C.M. 1001(f).

6. The trial counsel objected to the evidence on the bases of "[f]acts not in evidence and the characterization of the word 'hiding.'" The military judge summarily and erroneously sustained the objections. However, the predicate facts for a question on cross-examination need not be in evidence. The questioner need only have a good

faith basis for believing that the fact is true. *Cf. United States v. Robertson,* 39 M.J. 211, 214 (C.M.A.1994) (observing that cross-examiner need only have a good faith belief that the conduct in question occurred to impeach a character witness). The latter basis has some merit in that the question was posed in a slightly argumentative manner, but given the probative value of either of the likely answers, we are unwilling to underwrite this exercise of discretion by the military judge.

ing to distribute lysergic acid diethylamide, using marijuana on two occasions, violating a lawful general order, unauthorized absence, and breaking restriction. Appellant had previously received nonjudicial punishment from his battalion commander for using marijuana. He spent fifty-nine days in pretrial confinement. Appellant faced eighty-one years and two months of confinement when he pleaded guilty, but a pretrial agreement limited the confinement that the convening authority could approve to four years. We decline to adopt the government's reasoning that the operation of the pretrial agreement eliminated any prejudicial effects of the evidence that was erroneously admitted or excluded. In particular, the testimony by CC and JC's uncle exaggerated the degree of dishonor directly resulting from the offenses of which appellant had been found guilty, and we are not satisfied that the limitation upon confinement in the pretrial agreement fully purges the unduly prejudicial effect of this evidence upon the military judge. *United States v. Sales,* 22 M.J. 305, 308 (C.M.A.1986).

We have considered the matters personally submitted by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

## DECISION

We affirm only so much of the finding of guilty of Additional Charge III and its Specification as finds that appellant did, at or near Fort Lewis, Washington, between on or about 4 March 2001 and on or about 5 March 2001, violate a lawful general order, to wit: paragraphs 6(d)(1)(a) and 6(d)(1)(c), Fort Lewis Policy Statement # 10, dated 16 November 2000, by wrongfully having Miss JC in his barracks room overnight, between 2300 hours, 4 March 2001 and 0800 hours, 5 March 2001, and by failing to sign in the said Miss JC with the unit Charge of Quarters or Staff Duty Noncommissioned Officer. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, forty-five months confinement, and forfeiture of all pay and allowances.

Senior Judge HARVEY and Judge SCHENCK concur.