# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, HAM, and JOHNSON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 RICKY L. FISHER**
**United States Army, Appellant**

ARMY 20080012

Headquarters, Fort Drum, New York
Colonel David L. Conn, Military Judge
Lieutenant Colonel Michael P. Ryan, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA; MAJ Grace M. Gallagher, JA; Captain Pamela Perillo, JA (on specified issue brief); MAJ Theresa Raymond, JA; MAJ William M. Fischbach, III, JA (on brief).

For Appellee:  Lieutenant Colonel Mark H. Sydenham, JA; Major Lisa L. Gumbs, JA (on specified issue brief); Lieutenant Colonel Francis C. Kiley, JA (on brief).

20 February 2009

---------------------------------
OPINION OF THE COURT
---------------------------------

HAM, Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of wrongful possession of a controlled substance with intent to distribute (two specifications), in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, confinement for one year and three months, total forfeiture of all pay and allowances, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority limited confinement to ten months, but otherwise approved the adjudged sentence.  The case is before the court for review pursuant to Article 66, UCMJ.

Appellate defense counsel submitted the case to the court for review on its merits, that is, without raising any issues other than those appellant raised personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  After our initial review of the record of trial, we specified the following two issues:

I.

WHETHER THE MILITARY JUDGE COMMITTED
PLAIN ERROR WHEN HE ALLOWED TESTIMONY
FROM SFC ESSINGER AND ARGUMENT BY TRIAL
COUNSEL, DURING AGGRAVATION AND
SENTENCING, THAT: (1) THE COMMAND WAS
PERCEIVED TO BE "SOFT ON CRIME" DUE TO THE
LENGTH OF TIME IT TOOK TO BRING THE CASE TO
TRIAL, AND; (2) THE ACCUSED SHOULD BE
PUNISHED FOR THE MAN-HOURS REQUIRED
"DEALING WITH LEGAL PAPERWORK,
COUNSELINGS, AND TAKING THE ACCUSED TO
AND FROM APPOINTMENTS"?

II.

IF THE MILITARY JUDGE COMMITTED PLAIN
ERROR, DID THE ERROR AFFECT THE ADJUDGED
SENTENCE?

We have considered the entire record of trial, the matters appellant personally raised pursuant to *Grostefon*, 12 M.J. 431, appellant's brief on the specified issues, and the government's reply thereto. We find clear and obvious error in the trial counsel's presentation of improper evidence in the sentencing proceeding, and by the trial counsel's argument concerning that evidence. In this judge alone case, however, we conclude that the clear and obvious errors did not cause appellant to suffer material prejudice to his substantial rights. Accordingly, we affirm the findings and sentence as approved by the convening authority.

**FACTS**

Appellant pled guilty to possessing cocaine and marijuana with the intent to distribute those substances. As stipulated by the parties at trial, appellant obtained the drugs in April 2007, and "began to advertise among [s]oldiers that the drugs were for sale," but another dealer was selling drugs at a cheaper price and appellant was unable to sell his drugs at that time, so he stored them in a pair of shoes in his barracks room. On 29 May 2007, after a soldier implicated appellant, agents of the Criminal Investigation Command (CID) obtained a search authorization for appellant's barracks room and found three small bags containing what was later determined to be marijuana and cocaine. On 30 May 2007, appellant confessed to the offenses. Charges were not preferred until October 2007, and appellant did not face trial on the offenses until 14 December 2007 and 8 January 2008.

The trial counsel called Sergeant First Class (SFC) David Essinger as a witness for the government in presentencing. Sergeant First Class Essinger served as the First Sergeant in appellant's unit, a company of about 172 soldiers. After some introductory questions concerning SFC Essinger's background as a noncommissioned officer and the unit's mission, trial counsel asked SFC Essinger to "briefly describe how this incident . . . impacted the company in terms of good order and discipline." Sergeant First Class Essinger responded that "[t]his problem has been going on for so long . . . the impact has been . . . some questioning of the command of the decisions we make . . . ." Sergeant First Class Essinger also testified that "[t]he perception was that we're soft on--on the major crimes. It's easier for us to go after the small crimes or the small infractions and let go of the large events." Trial counsel then asked SFC Essinger to "explain the impact in terms of man hours stemming from this incident." Sergeant First Class Essinger responded that he was forced to move appellant and that "[o]n several occasions the [noncommissioned officers] of [appellant's new section] would take several hours per day overall" dealing with appellant's case. Sergeant First Class Essinger stated further that he had tasked a noncommissioned officer to track down "additional paper through legal, through battalion, through brigade, etcetera" and ultimately concluded "without hesitation" that nearly 60 man-hours of work were devoted to appellant's case. Finally, trial counsel asked SFC Essinger to describe "how often" he dealt "with drug issues" in the unit, to which SFC Essinger responded, "[w]ithout question in the last 10 months we've dealt with them on a regular basis if nothing less than once a week the commander and I would have to sit down and either interview, do a follow up, or deal with a new event in reference to that, sir." Trial defense counsel did not object during this testimony. Following this line of questioning, SFC Essinger testified that he had a negative opinion of appellant's potential for rehabilitation.

Trial defense counsel's cross-examination of SFC Essinger established that, although CID apprehended appellant on 30 May, the government did not prefer charges against him until 15 October. In addition, SFC Essinger testified that he knew appellant offered to plead guilty in November 2007 and agreed that military justice is a function of the command. Although SFC Essinger agreed that "at some level" the command controls how fast charges are preferred and brought to trial, his frustration about the process was not directed at the command.

On redirect examination, trial counsel asked SFC Essinger to "explain the delay by the command." SFC Essinger answered that "the commander and I have very little to do with it" although the command "pushed" and "pressed" for appellant's case to move expeditiously.

Sergeant First Class Essinger was the only witness the government called. In addition to his testimony, the government admitted the stipulation of fact with several enclosures, including appellant's confession, Enlisted Record Brief, and

3

pictures of the substances at issue, as well as a 79-page Drug Enforcement Administration Pamphlet called "Drugs of Abuse," and a Department of Defense pay chart.

The defense case in extenuation and mitigation consisted of a three-page "good soldier" packet and two noncommissioned officers' testimony about appellant's good duty performance while deployed to Afghanistan. Appellant also made a rambling, profanity-laced unsworn statement.[1]

Trial counsel's argument on sentencing requested the military judge sentence appellant to "15 months confinement, forfeiture of all pay and allowances, reduction to [E1], and a bad-conduct discharge." Relying on the testimony of SFC Essinger, trial counsel argued the sentence was warranted due to the "aggravating impact on the unit," including "the man-hours used in dealing with this incident, approximately 60 man-hours, dealing with legal paperwork, counselings, and taking the accused to and from appointments" and "the crime itself." Trial counsel also stated that "[w]e've heard the attitude that started to develop within the unit; the command was soft on crime." Trial counsel closed his sentencing argument by again asking the military judge to consider "one, the mission. . . . [t]wo, good order and discipline . . . to send a message to soldiers of this unit, many of them seated here today, that the command is not soft on crime; and [t]hree . . . Private Fisher needs to send a message to himself that his actions cannot be tolerated." Trial defense counsel did not object to trial counsel's argument.

In his argument on sentencing, trial defense counsel addressed some of the government's points, and "hope[d] the court would agree . . . the legal process in this situation is not punishment for the unit because the unit inflicted it. The command controls the legal process . . . . And so when it takes 9, 10, 11, 12 months for a case to get to court, that isn't the fault of the [s]oldier." Appellant "did everything that he could to speed this process up. So, when the court is deliberating on a sentence that should play no part in the sentence, but that should be considered also as mitigating circumstances in this case."

The military judge made no comment on the evidence or arguments prior to announcing the sentence other than to note, as a housekeeping matter, that a three-page "good soldier" packet was marked as an exhibit and admitted, and he considered that packet in his deliberations. The military judge sentenced appellant to the government's requested sentence.

---

[1] The profanity included appellant's reference to another NCO as a "j-off," and a comment that appellant's "shit smells better than most of the people in here."

## LAW

Because trial defense counsel did not object to either SFC Essinger's testimony or trial counsel's argument, the issue is waived or forfeited absent plain error. *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) (citing *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) and *United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998)).

To establish plain error, appellant must demonstrate that: (1) there was error, (2) the error was plain, clear, or obvious, and (3) the error materially prejudiced one of his substantial rights. *Id.* at 244 (citing *Hardison*, 64 M.J. at 281); *see also Powell*, 49 M.J. at 463-65 (establishing the plain error test in military jurisprudence).[2]  Appellant bears the burden of demonstrating he meets all three prongs of the plain error test. *Maynard*, 66 M.J. at 244.

The Supreme Court has found that an error is "plain" when it is "obvious" or "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993).  "Put another way, an error is 'plain' if it is 'so egregious and obvious' that a trial judge and prosecutor would be 'derelict' in permitting it in a trial held today." *United States v. Thomas*, 274 F.3d 655, 667 (2d Cir. 2001)(citing *United States v. Gore*, 154 F.3d 34, 43 (2d Cir. 1998)).

Rule for Courts-Martial (R.C.M.) 1001(b)(4) provides:

> The trial counsel may present evidence as to any
> aggravating circumstances *directly relating to or resulting
> from* the offenses of which the accused has been found
> guilty. Evidence in aggravation includes, but is not limited

---

[2] We note our superior court's holding in *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009) that "an error is not 'plain and obvious' if, in the context of the entire trial, the accused fails to show the military judge should be 'faulted for taking no action' even without an objection." (quoting *Maynard*, 66 M.J. at 245).  That case, however, is factually distinguishable because it was tried before a panel of members, not a military judge alone, and involved the military judge's *sua sponte* duty to provide instructions.  In a military judge alone case, like this case, it would be nearly impossible for an accused to show the military judge "should be faulted for taking no action" when the military judge is presumed to know the law and apply the law accordingly, and therefore, is not required to take action in the face of improper evidence or argument. *See generally United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000); *United States v. Erickson*, 65 M.J. 221, 224-25 (C.A.A.F.), *cert. denied*, __ U.S. __, 128 S.Ct. 424 (2007) (rejecting argument that military judge must act to cure misconduct in judge alone case).

> to, evidence of financial, social, psychological, and
> medical impact on or cost to any person or entity who was
> the victim of an offense committed by the accused and
> evidence of significant adverse impact on the mission,
> discipline, or efficiency of the command directly and
> immediately resulting from the accused's offense.

(Emphasis added).

Because evidence in aggravation must "directly relate" to the offenses of which the accused is found guilty, the rule is a "higher standard than mere relevance." *Hardison*, 64 M.J. at 281 (quoting *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995)(internal quotations omitted)). This includes "evidence of the natural and probable consequences of the offenses of which an accused has been found guilty," but "not every circumstance or consequence of misconduct is admissible . . . . An accused is not 'responsible for a never-ending chain of causes and effects.'" *United States v. Stapp*, 60 M.J. 795, 800 (Army Ct. Crim. App. 2004), *aff'd*, 64 M.J. 179 (C.A.A.F. 2006)(quoting *United States v. Witt*, 21 M.J. 637, 640 n.3 (A.C.M.R. 1985)); *see also Rust*, 41 M.J. at 478. "The evidence sought to be admitted must establish that the offense of which appellant has been found guilty 'contributed to those effects which the government is trying to introduce in evidence.'" *Id.* (quoting *Witt*, 21 M.J. at 641). "Moreover, appellant's offense must play a material role in bringing about the effect at issue; the military judge should not admit evidence of an alleged consequence if an independent, intervening event played the only important part in bringing about the effect." *Id. at 800-01* (citing *Rust*, 41 M.J. at 478).

## DISCUSSION

In its response to the specified issues, the government concedes, and we agree, that SFC Essinger's testimony concerning the time devoted to appellant's court-martial and trial counsel's use of this evidence in sentencing argument were improper. More than that, they were clear, obvious error. Further, SFC Essinger's testimony that the delay in appellant's court-martial caused other soldiers to view the command as soft on crime was also clear, obvious error, as was trial counsel's comment on this testimony in the sentencing argument. Appellant, however, has failed to convince us that he suffered material prejudice to a substantial right, and therefore, he is entitled to no relief.

In *United States v. Stapp*, we addressed the military judge's admission of sentencing evidence concerning the effect of the court-martial itself upon the readiness of the accused's company. Ultimately, we held that this testimony relating to the "administrative burden of the court-martial process" is not ordinarily admissible under R.C.M. 1001(b)(4) because it is not "'evidence of significant

6

adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense.'" *Id.* at 801 (quoting R.C.M. 1001(b)(4)). We reasoned that "to conclude otherwise, trial counsel would be able to argue to the sentencing authority at trial that an accused may be punished more harshly for the inconvenience of the trial. This would be akin to allowing comment upon the right to plead not guilty or remain silent, and we cannot countenance such an unjust outcome." *Id.*

Similarly, in this case, the government claimed "the approximately 60 man-hours, dealing with legal paperwork, counselings, and taking the accused to and from appointments" was aggravating evidence. Furthermore, the government presented evidence that the delay in appellant's court-martial, or the length of time between the crime and the trial, caused other soldiers to view the command as soft on crime. In essence, the government argued appellant should be punished more harshly because of the administrative burdens of "legal paperwork," the time spent counseling appellant, and the length of time between the offense and the trial. We find that this evidence is not properly attributable to appellant because it is not directly or immediately resulting from the appellant's offense.[3] Admission of this testimony and trial counsel's argument concerning this evidence was clear, obvious error.

More troubling is the government's sentencing evidence and argument alleging the court should take into consideration the hours spent by the command escorting appellant to and from his legal appointments. This evidence and argument is inappropriate and casts in an improper and negative light the unquestioned necessity of appellant's consultation with his defense counsel and preparation of his case. Accordingly, we find this evidence is also clear, obvious error.

---

[3] Argument relating to specific deterrence of the wrongdoer, or general deterrence of those who know of the wrongdoer's crime and the wrongdoer's sentence, from committing the same or similar offenses, is proper. In this case, however, trial counsel argued an administrative burden of the court-martial process – the length of time between the offenses and the trial – resulted in the perception that the command was "soft on crime." Argument concerning an administrative burden is not proper to establish specific or general deterrence, and does not directly relate to or result from the offenses of which the accused has been found guilty. R.C.M. 1001(b)(4). The processing of a case, at least up until referral, is solely within the government's control.

In *Stapp*, we granted relief on the sentence due to the military judge's erroneous admission of evidence such as that admitted here.[4]  Like this case, *Stapp* was tried by a military judge alone; however, there is a crucial distinction between *Stapp* and appellant's case.  *Id.* at 799.  In *Stapp*, the trial defense counsel *objected* to the improper testimony.  Because the defense counsel objected at trial, the question on appeal was whether the military judge abused his discretion by admitting the evidence, and, if so, whether the erroneous ruling caused appellant to suffer material prejudice to a substantial right.  *Id.* at 800.  "Erroneous admission or exclusion of evidence during the sentencing portion of a court-martial causes material prejudice to an appellant's substantial rights only if the admission or exclusion of the evidence substantially influenced the adjudged sentence."  *Id.* (citations omitted).  Where defense lodges an objection to the admission of evidence and the judge abuses his discretion by admitting the evidence, as occurred in *Stapp,* the burden is on *the government* to convince the appellate court that admission of the evidence was harmless.  *See, e.g., United States v. Pablo,* 53 M.J. 356, 359 (C.A.A.F. 2000)(citing *United States v. Pollard*, 38 M.J. 41, 52 (C.M.A. 1993)).  The government could not carry that burden in *Stapp*.

The landscape is different where, as here, defense counsel lodges no objection at trial to either the evidence or trial counsel's use of that evidence in argument.  In fact, instead of objecting, trial defense counsel chose to attack the improper evidence through effective cross-examination, and to attack the improper argument through counterargument.  Trial defense counsel's tactical choices effectively minimized both SFC Essinger's testimony and trial counsel's argument.  *See generally Maynard*, 66 M.J. at 245.

Accordingly, we do not ask in this case whether the military judge abused his discretion or look to the government to carry its burden under a harmless error analysis.  Rather, under a plain error analysis, we look to appellant to convince us of all three prongs of the *Powell* test.  Crucially, appellant must convince us that he suffered material prejudice to a substantial right when he is tried by military judge alone.  Although appellant meets the first two prongs of the *Powell* test, he fails the third.

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle.  A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence."  *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000)(citing *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)).  The same is true when it comes to a

---

[4] We held that *Stapp* fell "under the doctrine of cumulative error, in which 'a number of errors, no one perhaps sufficient to merit reversal,' in combination necessitate[d] remedial action."  *Id.* at 802 (internal citations omitted).

military judge's sentence. *Hardison*, 64 M.J. at 283-84 (stating "the 'experienced and professional military lawyers who find themselves appointed as trial judges' are assumed to be able to appropriately consider only relevant material in assessing sentencing")(citing *United States v. McNutt*, 62 M.J. 16, 26 (C.A.A.F. 2005) (quoting *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999)).  As a result, "'plain error before a military judge sitting alone is rare indeed.'"  *Robbins*, 52 M.J. at 457 (quoting *Raya*, 45 M.J. at 253).

Similarly, in cases of improper argument, the military judge is presumed to "distinguish between proper and improper sentencing arguments." *Erickson*, 65 M.J. at 225; *See also United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F. 2004) (finding no prejudice and thus no plain error where there is no evidence improper argument affected the military judge or impacted appellant's sentence).  Moreover, there is no requirement for the military judge to state on the record that he did not consider improper argument or evidence; there is no evidence required to trigger the presumption.  *See Erickson*, 65 M.J. at 224-25 (rejecting argument that military judge must act to cure misconduct in judge alone case).  Comment by the military judge would only be required if appellant introduced evidence to rebut the presumption.  *Id.* at 225.[5]

Applying these presumptions, neither the fact that the government's sentencing case was thin, nor the fact that the military judge adjudged the same sentence as trial counsel requested are sufficient, alone or in conjunction with each other, to establish prejudice.  We recognize that the government only called one sentencing witness, SFC Essinger, and the majority of the other sentencing evidence presented by the government was not persuasive or even aggravating.  For example, the vast majority of the 79-page Drug Enforcement Administration Pamphlet called "Drugs of Abuse," was completely irrelevant to the offenses at issue.  Similarly, SFC Essinger's testimony concerning "how often" he dealt with other "drug issues" in his unit was irrelevant and improper under the facts of this case.  There is nothing in those facts, including the sentence the military judge adjudged, or anywhere else in the record, that provides the "clear evidence" required to overcome the strong presumptions in favor of the military judge.  *See id.* (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)).  There is nothing in the record that demonstrates the military judge considered the improper evidence or was swayed by

---

[5] There is no requirement for the military judge to note that he did not consider improper evidence or argument.  While not necessary to trigger the presumption that he knows the law and follows it, a transparent statement by the military judge that he is not considering improper evidence or argument forcefully moots any potential issues and, we believe, further increases the perception of fairness in the military justice system.  A military judge stepping in and stopping the presentation of inadmissible evidence or improper argument is an even more forceful rejoinder and immediately corrects an errant counsel.

the trial counsel's improper argument. *See Rodriguez*, 60 M.J. at 90; *see also Erickson*, 65 M.J. at 225. There is nothing to suggest that the military judge would have sentenced appellant any differently absent the improper evidence or argument. *See Rodriguez*, 60 M.J. at 90. Appellant "also fails to explain how he was materially prejudiced when he received the protection and benefit of a pretrial agreement that limited his maximum time in confinement to [ten months] regardless of the sentence adjudged by the court." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006) (citations omitted).

Appellant's arguments would carry more weight if trial defense counsel objected at trial or if this case was tried before members instead of by military judge alone. *See generally Stapp* 60 M.J. 795; *see also Hardison*, 64 M.J. at 284 ("[m]embers are less likely to be able to separate relevant matters and make their decisions based solely on admissible evidence")(citing *United States v. Wingart*, 27 M.J. 128, 136 (C.M.A. 1988)). But neither is the case, and, under the facts presented, appellant has failed to demonstrate that any improper evidence or argument materially prejudiced his substantial rights. Therefore, he is not entitled to any relief.

## CONCLUSION

On consideration of the entire record, including consideration of the issues personally specified by the appellant, we hold the findings and sentence as approved by the convening authority are correct in law and fact and appellant suffered no material prejudice to any substantial rights. Moreover, we specifically hold that the sentence as approved by the convening authority is appropriate. Accordingly, the findings and sentence are affirmed.

Judge TOZZI and Judge JOHNSON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10