**UNITED STATES, Appellee,**

v.

**McKinley J. RHOADS, Specialist, U.S. Army, Appellant.**

No. 63,936
CM 8900012.

U.S. Court of Military Appeals.

Submitted June 26, 1990.

Decided Feb. 26, 1991.

For Appellant: *Lieutenant Colonel Russell S. Estey* and *Captain Alan M. Boyd* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter* (on brief); *Captain George R. Johnson.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted by special court-martial of two specifications of willful disobedience of a noncommissioned officer and one specification each of unauthorized absence, willful damage to private property, and false swearing, violations of Articles 86, 91, 109, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 891, 909 and 934, respectively. The court-martial members sentenced appellant to the jurisdictional limits of the forum, including a punitive discharge. Art. 19, UCMJ, 10 USC § 819. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence. 29 MJ 822 (1989).

We granted review to determine whether certain evidence should have been admitted

in the sentencing stage of the trial.[1] Finding no error prejudicial to appellant's substantial rights, we affirm.

■ During the Government's case in aggravation, the first sergeant of appellant's battery, First Sergeant Hood, was called to state his opinion as to appellant's potential for rehabilitation, and he was asked to express the basis for that opinion.[2] The first sergeant answered that his opinion was based in part on appellant's statement that he had no respect for the command structure in the unit and in part on appellant's prior record in another battery. Trial counsel then proceeded to probe the reasons for appellant's transfer to Bravo battery (his present unit) from Charlie battery. Defense counsel objected. In a sidebar conference, trial counsel advised that this answer would reveal specific acts of misconduct[3] that were "directly related to" the offenses of which appellant had been convicted herein, citing RCM 1001(b)(4), Manual for Courts-Martial, United States, 1984. After some discussion of the rule and an objection by defense counsel—that, even if related directly to the offenses, the evidence should be excluded under Mil.R. Evid. 403, Manual, *supra*—the military judge announced that the first sergeant could testify about this matter. In doing so he stated that he had considered the Mil.R.Evid. 403 objection and was overrul-

1. The issues granted review were:

   I

   WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ALLOWING OVER DEFENSE OBJECTION TESTIMONY CONCERNING INADMISSIBLE UNCHARGED MISCONDUCT DURING DIRECT EXAMINATION OF A GOVERNMENT WITNESS ON SENTENCING.

   II

   WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT THE TESTIMONY ADMITTED OVER DEFENSE OBJECTION WAS ONLY A DESCRIPTION OF APPELLANT'S GENERAL ATTITUDE AND, THUS, ADMISSIBLE AS PROPER AGGRAVATION EVIDENCE.

2. In pertinent part, the first sergeant testified as follows based on his association with the accused for almost 1 year:

   Q: Okay. Have you during that time formed an opinion as to his overall performance as a soldier?
   A: Yes, sir.
   Q: And what is your opinion of his overall performance?
   A: I think he's—he's a below average soldier.
   Q: And for what reason is that?
   A: His attitude towards superiors, his daily performance.
   Q: Do you have an opinion as to whether he has potential for further productive service?
   A: No, sir, I don't—I don't think so.
   Q: And, in general, why do you feel that he does not have further potential for productive service?
   A: Well, he's—he's told me to my face, sir, that he has no respect for—for the NCOs in my battery or myself, and with his past

record from Charlie Battery to my battery, I see the same trend. I don't think it's going to get any better.
   Q: Well, you were the First Sergeant in Bravo Battery when he came over from Charlie Battery?
   A: Yes, sir.
   Q: What was the reason that he came over from Charlie Battery?
   [After the sidebar where the objection to the question was overruled, the witness answered:]
   A: For the same reason I just stated, sir, that he couldn't—he says he couldn't get along, the NCOs were picking on him over in Charlie Battery. Instead of them doing a chapter on him, they gave him to me. It was a "rehab" transfer.
   Q: Has the accused's misconduct had an adverse impact on morale and discipline in your unit?
   A: Yes, sir, it has.
   Q: And would you describe in general terms how that—that adverse effect?
   A: Well, it seems—it seems lately we're getting a lot of cases of—we call it disrespect, and then me and the battery commander have argued many times about what is disrespect. We have shot a lot of them down and some of them we had—we had to go with Article 15s. But it seems like we're getting a rash of—say, say a lawyer type atmosphere in my battery. "What are your rights?", "Can you do this?", "You can't do that.", things like that. It—it's just a constant pain in the—in the behind....

3. Because of our resolution of the issue, we need not decide whether the witness' responses indeed related "uncharged misconduct."

ing it. Defense counsel then objected to the evidence under Mil.R.Evid. 404(b) as being uncharged misconduct. That was rejected as well.

■ The correctness of this ruling is governed by another Manual provision. RCM 1001(b)(5) allows a witness with appropriate knowledge of an accused to state his opinion of that accused's potential for rehabilitation. *United States v. Aurich*, 31 MJ 95 (CMA 1990). However, as we concluded in *United States v. Kirk*, 31 MJ 84 (CMA 1990), the rule does not allow the proponent of the witness (in this case the United States) to present the basis for that witness' opinion of the potential or lack thereof. Again, as we view RCM 1001(b)(5), testimony as to the basis of the opinion may only be elicited when the accused attacks the opinion as being without foundation. This is particularly true when, as here, the evidence suggests specific acts of misconduct.[4] However trial counsel attempted to characterize this evidence, it was in reality the basis for the first sergeant's opinion that appellant had little potential for rehabilitation. As such, the testimony went beyond a mere "description of appellant's general attitude." Thus, the military judge erred in allowing First Sergeant Hood to testify as to the specific basis for the opinion on direct examination.

---

**4.** Of course specific acts of misconduct, even if not charged, may form part of the basis for the opinion. By contrast the charged offenses may not constitute the sole basis for the opinion. *Compare United States v. Wilson*, 31 MJ 91

■ The remaining question is whether appellant suffered substantial prejudice from the evidence. Art. 59(a), UCMJ, 10 USC § 859(a). Appellant was convicted of willfully disobeying orders from two noncommissioned officers. These offenses occurred on separate days. He was also found guilty of slashing the tires on a vehicle owned by another soldier in the battery. This act was in apparent retaliation for the victim's refusal to acknowledge appellant's accusation of the theft of a hubcap from his own automobile. When appellant was interviewed about this last offense, he lied about the matter in a sworn statement to the military police.

In his behalf appellant presented two witnesses who testified that he was a good soldier and had a reputation for being a good performer in the field. However, there was other evidence to the contrary. In light of all of these factors we are satisfied that the error did not cause appellant to suffer substantial prejudice. *Cf. United States v. Weeks*, 20 MJ 22 (CMA 1985).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

(CMA 1990), *with United States v. Horner*, 22 MJ 294 (CMA 1986).