# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and BORGERDING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class SHAUN P. KUHN**
**United States Army, Appellant**

ARMY 20120098

Headquarters, United States Army Intelligence Center of Excellence
and Fort Huachuca
Karen W. Riddle, Military Judge
Colonel Thomas C. Modeszto, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Jonathan F. Potter, JA; Major Amy E. Nieman, JA; Captain Matthew M. Jones, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Carl L. Moore, JA (on brief).

29 May 2014

-----------------------------------
MEMORANDUM OPINON
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BORGERDING, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of willful disobedience of a superior commissioned officer, violation of a lawful general regulation, and false official statement in violation of Articles 90, 92, and 107, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892, 907 (2006) [hereinafter UCMJ].  Contrary to his pleas, a panel composed of officer and enlisted members convicted appellant of maltreatment and wrongful interference with an adverse administrative proceeding in violation of Articles 93 and 134,

UCMJ, 10 U.S.C. §§ 893, 934 (2006).* The panel sentenced appellant to a bad-conduct discharge, confinement for 180 days, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case is before the court for review under Article 66, UCMJ. Appellant assigns two errors, one of which merits discussion but no relief. We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit.

**FACTS**

Specialist (SPC) AJ was a member of the Army National Guard. In November 2010, SPC AJ arrived at Goodfellow Air Force Base (AFB) and reported to Advanced Individual Training (AIT) to become a 35N, Signal Intelligence Analyst. Specialist AJ was not a traditional AIT student, but was a Military Occupational Specialist Transfer or MOS-T and as such, she was "considered a squad leader" for the AIT students. Consequently, she was not allowed to have contact other than professional interactions with the AIT students. Similarly, she was not allowed to have non-professional contact with the permanent party cadre because of her student status.

Appellant was a cadre member in SPC AJ's AIT platoon. In December 2010, appellant began sending texts to SPC AJ on her phone. Specialist AJ testified that, with one exception, the texts were all professional at first. Nevertheless, on one occasion in January 2011, appellant cornered SPC AJ in an empty classroom, hugged her, and kissed her.

In February 2011, appellant was transferred to the Warrior Training Team with duty at a Field Training Exercise (FTX) site "in the far reaches" of Goodfellow AFB. However, appellant would still drive around the main area of the base, "showing up" wherever SPC AJ happened to be and following her everywhere she went. She testified that it got to the point where she stopped working out trying to avoid him. Appellant would tell SPC AJ that he was watching her and then "make it a game" by trying to make her guess where he was located. On one occasion, appellant texted SPC AJ that he was watching her as she walked to a house and that he could see what she was doing inside. Appellant then asked her to come outside. Specialist AJ told appellant, "no," and made sure all of the blinds were shut and the doors were locked. Appellant told SPC AJ that he could get into the house and that if she said, "no," he would "still have control over [her] platoon and that he was able

---

* The panel acquitted appellant of rape, wrongful sexual contact, and forcible sodomy, violations of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925 (2006 & Supp. IV 2011).

2

to make [her] soldiers have a miserable time . . . and that he would tell different sergeants that they were bad soldiers and they would reap the repercussions." This convinced SPC AJ to go outside to meet appellant. On another occasion, appellant asked SPC AJ to let him into her barracks room, but she lied and told him that her roommate was there.

After approximately two weeks, appellant would only follow SPC AJ sporadically, which she testified was worse because she was left "wondering what was going to happen, where he was, if I was walking next to him and didn't notice at the time." Also during this time, appellant sent SPC AJ thousands of text messages, many that were sexually explicit and graphic, including one text which contained a photo of his penis.

While at the FTX site, appellant would task SPC AJ to play "roles" during exercises, resulting in her being alone at times, which allowed appellant to hug her or try to kiss her neck. During this time, appellant would tell SPC AJ that various cadre members did not like her or thought she was a "bad soldier," and thus she did not report any of appellant's actions. Specialist AJ testified she "felt trapped" but was hoping to graduate soon and return to her National Guard unit.

Of her time with appellant, SPC AJ testified:

> I think I was stuck in a sort of snow globe that I had no way of seeing out of, that everything [appellant] had created a bond with me in the beginning as a mentor, so I had respect for him, and as everything progressed between us, for me at that time in the Army, I felt like that's just something I had to deal with. As a female in the military, I thought you just deal with it until you get away and you hold it off the best you can because sexual harassment happens all the time.

As part of its case in aggravation, the government called appellant's company commander, Captain (CPT) BS, to testify as to appellant's duty performance. Captain BS told the panel that prior to appellant's misconduct, his duty performance was "satisfactory," but after the allegations came to light, appellant's performance "diminished." Nevertheless, CPT BS gave appellant a "seven to eight" on the rehabilitative potential scale. In response to a question from a panel member, CPT BS elaborated on this saying: "I believe he can be rehabilitated and put back into society after being held accountable for his actions. . . . a man can be rehabilitated through appropriate treatments or correctional facilities and be put back into society and still function in society."

3

Appellant called three witnesses in his case in extenuation and mitigation, all of whom testified as to appellant's excellent duty performance, particularly during deployments. In rebuttal to this testimony, the government recalled CPT BS to "expand upon" appellant's duty performance before and after his misconduct. Captain BS again told the panel that after appellant was under investigation, his performance "diminished," and that "he [was] of very little value" to the organization. Captain BS indicated that the reasons for this opinion were appellant's mental health issues as well as child care issues. Although defense counsel made two objections to CPT BS's rebuttal testimony, both of which were sustained, he did not object at all to this particular testimony.

Appellant gave a short unsworn statement, during which he referred three times to his association with SPC AJ as a "relationship." In response to this characterization, the assistant trial counsel made the following assertion during her sentencing argument:

> You've seen all of the evidence at this point. Compare that statement. Compare his acceptance of responsibility with what has been presented before you today. Compare that to the graphic text messages, to the photos, to him shoving his penis in her mouth. Compare that to him saying, "We had a romantic relationship with text messages and phone calls, that's how I violated a regulation."

> Today, he said he's sorry for his bad judgment, for letting his emotions lead him to a mistake--a mistake, which was caveated; he is still a leader. He just made a single mistake. This is a man who needs specific deterrence. He's proven to you that he just doesn't grasp the pure criminality of his behavior. He doesn't even understand that this was misconduct. He considers it to be an inappropriate decision. He considers it to be a single solitary mistake. This shows you that he has a total disregard for the rules and regulations that apply to service and he has no understanding of what he managed to do to Specialist [AJ].

Assistant trial counsel went on to argue:

> The fact is he broke that girl. He tore her down, he destroyed her spirit, keeping her in isolation, under surveillance, oppressive, extreme--he was aggressive and flat-out vulgar towards that girl--that junior enlisted

4

> service member for 120 days. . . . This was her prison for 120 days.
>
> ---
>
> Specialist [AJ] lived in her prison for 120 days. For four months. I argue for you that a minimum of one year for every month of that oppression is an appropriate sentence. A minimum of four years for that--for the maltreatment of Specialist [AJ] in such a grossly vulgar and pervasive manner an appropriate response--an appropriate sentence . . . Four months--I argue four years minimum is the most appropriate sentence for the maltreatment.

She continued:

> So, I'm going to leave it to you to figure out the appropriate sentence for lying to a commissioned officer and a first sergeant, for disobeying a company commander, for convincing a junior service member to do the same; to lie to a commissioned officer, and for multiple violations of a general regulation that demonstrates a true disregard as to its purpose and intent. And he did that to satisfy his own personal desires. An inappropriate decision or four months—four months of consistent behavior that is absolutely contrary to the honor and integrity of an NCO.

During assistant trial counsel's sentencing argument, she also highlighted that CPT BS testified appellant "will likely be able to rehabilitate into society." Assistant trial counsel did not mention CPT BS's opinion that appellant was "of little value" or the reasons behind this opinion.

Appellant's civilian defense counsel did not object at all to trial counsel's argument. Instead, he argued:

> He did not act like an NCO for four months. He did not act like a leader for four months. He shamed us all for four months. Take your four months back. Right now you represent the United States Army. Take the four months back. Put him in confinement for four months. Take your four months back.

Appellant asserts three separate errors, arising from CPT BS's rebuttal testimony and assistant trial counsel's sentencing argument, that appellant argues amount to plain and obvious errors that materially prejudiced his substantial rights. First, he avers that assistant trial counsel improperly referred to him "shoving his penis in [SPC AJ's] mouth" even though he had been acquitted of forcible sodomy. Second, without further discussion, appellant takes issue with the fact that "[t]he government elicited testimony that [appellant] was no longer an asset because of his mental health and child-care issues." Finally, appellant notes that assistant trial counsel asked the panel to sentence appellant to four times the maximum allowable amount of confinement for maltreatment.

## LAW AND ANALYSIS

### *Improper Testimony*

Because appellant did not object to the portions of CPT BS's testimony he now claims were improper, we will apply a plain error analysis. *United States v. Eslinger*, 70 M.J. 193, 197-98 (C.A.A.F. 2011) ("Failure to object to the admission of evidence at trial forfeits appellate review of the issue absent plain error."). Appellant bears the burden of demonstrating that: "(1) there was error; (2) the error was plain, clear, or obvious, and (3) the error materially prejudiced one of his substantial rights." *United States v. Fisher*, 67 M.J. 617, 620 (Army Ct. Crim. App. 2009); *see also United States v Powell,* 49 M.J. 460, 463-65 (C.A.A.F. 2008).

We find that CPT BS's rebuttal testimony regarding appellant's duty performance subsequent to his misconduct was properly offered to rebut the good duty performance evidence offered by the defense witnesses. *See United States v. Brewer*, 43 M.J. 43 (C.A.A.F. 1995); Rule for Courts-Martial 1001(b)(5)(A), (d). To the extent that CPT BS's brief testimony regarding appellant's mental health and child care obligations could be construed as improper or irrelevant, we still do not find any error to be plain, clear, or obvious. *See generally Fisher*, 67 M.J. at 620.

Even assuming plain or obvious error, we find no material prejudice to appellant's substantial rights. "We test the erroneous admission . . . of evidence during the sentencing portion of a court-martial to determine if the error substantially influenced the adjudged sentence." *Eslinger*, 70 M.J. at 200-01 (quoting *United States v. Griggs*, 61 M.J 402, 410 (C.A.A.F. 2005)). Any possible error in CPT BS's rebuttal testimony did not substantially influence the adjudged sentence for the following reasons. First, CPT BS also gave a favorable opinion as to appellant's rehabilitative potential during his testimony in the government's case in aggravation, and it was this favorable opinion, not the rebuttal testimony, that assistant trial counsel highlighted in her sentencing argument. Second, appellant himself raised his mental health issues in his unsworn statement and in the video of his statement to law enforcement authorities, both of which were admitted without

objection during the prosecution's case in chief. Finally, the military judge properly instructed the panel that whether or not appellant should "receive a punitive discharge or any other authorized legal punishment is a matter for you alone to decide in the exercise of your independent discretion based on your consideration of all the evidence."

Accordingly, we hold appellant has failed to meet his burden to establish all three prongs of the plain error test with respect to CPT BS's testimony.

### *Improper Argument*

Appellant also did not object at any time to assistant trial counsel's sentencing argument. Thus, we review "the propriety of the argument for plain error." *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citing *United States v. Marsh,* 70 M.J. 101, 104 (C.A.A.F. 2011)). Under plain error review, appellant must prove "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Marsh,* 70 M.J. at 104 (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)).

We find no plain or obvious error in the assistant trial counsel's sentencing argument. We focus not "on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

With respect to her use of the phrase "shoving his penis in her mouth," we find that assistant trial counsel did not "assert that [appellant] could and should still be punished for crimes of which he had just been acquitted," as appellant claims in his brief. To the contrary, her comment was meant as an example of appellant's maltreatment of SPC AJ—along with the graphic and inappropriate text messages and photos—in order to illustrate a contrast to appellant's description in his unsworn statement of their "relationship." In short, assistant trial counsel's argument was that appellant needed "specific deterrence" because he did not appreciate the gravamen of his crimes against SPC AJ. We find this assertion to be within the limits of a proper sentencing argument.

Assistant trial counsel's argument that appellant should be sentenced to four years confinement for maltreating SPC AJ, when maltreatment carries a maximum of only, *inter alia,* one year of confinement is more problematic. *Manual for Courts-Martial, United States* (2008 ed.), pt. IV, ¶ 17.e. However, after a review of the assistant trial counsel's argument as a whole, we conclude that while her comments regarding her punishment recommendation may have been inartful, she did not focus solely on the specification alleging maltreatment under the Uniform Code of Military Justice during her entire argument. This is evidenced by the end of her argument, when, after describing all of the misconduct for which appellant had been

7

convicted during the same period of time—to include his false official statement, willful disobedience of a superior commissioned officer, and violation of a lawful general regulation—she referenced appellant's "four months of consistent behavior that is absolutely contrary to the honor and integrity of an NCO" and urged the panel "to get to the appropriate sentence." Accordingly, we find no plain or obvious error in this argument.

Even assuming we were to find plain or obvious error with one or both of these arguments, we conclude appellant has failed to meet his burden to demonstrate a material prejudice to his substantial rights. To make this determination, we have examined the "*Fletcher* factors," articulated in *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005), as applied in the context of an allegedly improper sentencing argument. *United States v. Frey*, __ M.J.__, slip. op. at 9 (C.A.A.F. 19 May 2014) (citing *Halpin*, 71 M.J. at 480). In *Fletcher*, our superior court instructed us that the "best approach [in assessing prejudice] involves a balancing of three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. at 184; *see also Frey*, __ M.J.__, slip. op. at 9. We consider whether "trial counsel's comments, taken as a whole, 'were so damaging that we cannot be confident that [the appellant] was sentenced on the basis of the evidence alone." *Frey*, __ M.J.__, slip. op. at 8-9 (quoting *Halpin*, 71 M.J at 480) (alteration in original).

Assistant trial counsel's brief reference to appellant "shoving" his penis in SPC AJ's mouth is one line in a six-page argument and, as noted above, was not a request for the panel to punish appellant for an act of which he was acquitted. Likewise, even were we to assume that assistant trial counsel argued for a sentence of four years confinement for one specification of maltreatment, appellant stood convicted of several other charges and specifications, and the maximum confinement authorized for all of these convictions was eighteen years, well above the four years requested by assistant trial counsel. Moreover, defense counsel argued that the panel should "take your four months back" and sentence appellant to four months confinement. The panel's sentence to confinement of 180 days reflects that they agreed with defense counsel's views. *See Baer*, 53 M.J. at 238 ("In view of the relative lightness of the sentence which appellant received, we believe that his substantial rights were not materially prejudiced by the imperfections in his sentencing hearing."). Thus, "[e]ven assuming a deliberate strategy to indulge in improper argument," assistant trial counsel's "effort to 'cultivate a severe sentence did not bear fruit.'" *Id.* (quoting *United States v. Ramos*, 42 M.J. 392, 397 (C.A.A.F. 1995). Any conceivable error here is certainly not severe. *See generally Fletcher*, 62 M.J. at 184-85.

The military judge did not issue any curative instructions specifically relating to these alleged errors. *See generally id.* at 185. However, the military judge did

give proper sentencing instructions at the close of evidence. Specifically, she informed the panel that "the maximum punishment that may be adjudged in this case [was] reduction to the grade of E-1, forfeiture of all pay and allowances, confinement for 18 years, and a dishonorable discharge," and she gave the panel the standard instructions that appellant was to be "sentenced only for the offenses of which he has been found guilty," and that they should adjudge "a single sentence for all offenses of which [appellant] has been found guilty."

Finally, the evidence supporting appellant's sentence was strong and any potential improper comment was "surrounded by powerful and proper sentencing argument." *Frey*, __ M.J.___, slip. op. at 15. As assistant trial counsel argued: "[H]e broke that girl. He tore her down, he destroyed her spirit, keeping her in isolation, under surveillance, oppressive, extreme--he was aggressive and flat-out vulgar towards that girl--that junior enlisted service member for 120 days." Despite the fact that he was a cadre member charged with training AIT students, appellant sent SPC AJ thousands of texts, many of which were vulgar, grossly inappropriate, unprofessional, and sexually explicit. He followed SPC AJ everywhere she went, to the point that she stopped working out, stayed inside, and felt she constantly had to look for him so she could know where he was and whether he was watching her. These texts and phone calls led to appellant's unwanted attention toward SPC AJ at the FTX site when he would get her alone so he could touch her or try to kiss her. By this point, SPC AJ testified that she simply resigned herself to this treatment saying that "[a]s a female in the military, I thought you just deal with it until you get away and you hold it off the best you can because sexual harassment happens all the time." In addition, appellant compounded his misconduct when he lied to his first sergeant about his "relationship" with SPC AJ, and when he willfully violated the no contact order issued by his company commander by immediately contacting SPC AJ and telling her to lie to the commander and the first sergeant when asked about his behavior.

As in *Halpin* and *Frey*, the "'weight of the evidence amply supports the sentence imposed by the panel'" and thus, appellant "has failed to demonstrate he was not sentenced on the basis of evidence alone." *Frey*, __ M.J.___, slip. op. at 15 (quoting *Halpin,* 71 M.J. at 480). Appellant faced a sentence to, *inter alia,* eighteen years confinement and a dishonorable discharge. He was sentenced to, *inter alia,* only 180 days confinement and a bad conduct discharge. Accordingly, we also find no material prejudice to appellant's substantial rights.

Finally, we have also considered "the cumulative impact" of all alleged improper arguments and alleged elicited improper testimony in the context of the trial as a whole, and find that the first and third *Fletcher* factors weigh so heavily in favor of the government that we are confident appellant was sentenced on the basis of the evidence alone. *See Halpin*, 71 M.J. at 480.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Senior Judge LIND and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court